### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| RUTH A. LEIGH and SARAH STURGEON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | **Case No. 07-CV-2155** |
| | ) | |
| JACK KEMP, STEPHEN DARIMONT, TAD FREEZELAND, JOE SANDERS, RON SCOTT, DARRELL COX, and MICHAEL COX, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#143) filed by Defendant Michael Cox, the Motion for Summary Judgment (#149) filed by Defendant Jack Kemp, the Motion for Summary Judgment (#161) filed by Defendants Darrell Cox, Stephen Darimont, Tad Freezeland, Joe Sanders and Ron Scott, and the pro se Motion for Summary Judgment (#153) filed by Plaintiffs, Ruth A. Leigh and Sarah Sturgeon. Following this court's careful and thorough consideration of the arguments of the parties and the documents provided by the parties, this court rules as follows: Defendants' Motions for Summary Judgment (#143, #149, #161) are GRANTED and Plaintiffs' Motion for Summary Judgment (#153) is DENIED. In addition, Defendants' Motions to Adopt (#159, #163) are GRANTED and Plaintiffs' Motion for Judicial Notice (#184) is DENIED.

### FACTS[1]

---

[1] The facts are taken from the Statements of Undisputed Facts filed by the parties and the documents filed by the parties, including deposition transcripts. This court notes that it has

Plaintiff Ruth Leigh (Leigh) is a retired teacher who resides in a home on a cul-de-sac known as Whispering Oaks Drive in Charleston, Illinois. Leigh's property is located in Richard V. Noble's Subdivision. Leigh owns the property with her husband, Peter Leigh, but her husband does not live there. Plaintiff Sarah Sturgeon (Sturgeon) is Leigh's sister and lives in California. Leigh's next door neighbor on the cul-de-sac is Defendant Jack Kemp (Kemp). Kemp owns a vending machine business which he runs out of his home. Leigh and Kemp have had some disagreements over the years about various issues related to their adjoining properties and the cul-de-sac. Leigh has complained that Kemp has caused damage to her property. In 2000, Leigh hired Bruce Foltz to prepare a survey of the property. Foltz prepared a survey drawing of the area, dated December 18, 2000. The drawing showed that there was a 50-foot right-of-way from the center point of the cul-de-sac. Leigh testified that Foltz put a center pin in the cul-de-sac, but she does not agree that he accurately located the center of the cul-de-sac. Leigh testified, however, that she was sure Foltz was a "qualified technician."

Leigh testified that, in April 2001, she placed landscape timbers along the cul-de-sac to "get the area looking good." Kemp testified that he complained about the timbers but no one did anything about it. In May 2005, Leigh hired a landscaping contractor to place boulders by the cul-de-sac to prevent vehicles from coming onto her property. Kemp complained to Defendant Michael Cox (Cox), the Charleston township highway commissioner, that the boulders were impeding the

carefully reviewed all of the transcripts and other documentation provided by the parties, including the video recording of the August 23, 2005, incident. This court notes that many, many pages of the transcripts as well as many of the documents provided relate to matters of no relevance to the actual issues involved in this case. This court has attempted to include only the facts that are material to the issues to be decided.

path of a truck that needed to make deliveries for his business. Kemp told Cox that the trucks were having trouble turning around. Kemp testified that he and his son moved the boulders back from the cul-de-sac so they could get vehicles in.

On July 11, 2005, Leigh was not at home but her husband, Peter Leigh, was at the property. Peter Leigh called the sheriff's office to complain that there had been vandalism at the property because the landscape boulders had been moved. Defendant Joe Sanders (Sanders) and another sheriff's deputy responded and came to the property. The officers talked to Kemp and Kemp showed them some documents. Peter Leigh testified that the deputies suggested that the township should be involved in the process and called the township. Two township workers then came to the Leigh property. Peter Leigh testified that Kemp was angry and wanted the boulders moved back and the deputies wanted the matter resolved. Peter Leigh testified that he was nervous and frightened and felt pressured by Kemp and the two deputies insisting that the boulders be moved. Peter Leigh testified that he felt he had no choice and allowed the township workers to move the boulders back.

On July 13, 2005, Sturgeon was visiting Leigh and was staying at her home. Sturgeon testified that Cox came to the door. At that time, Leigh was not at home. Sturgeon testified that she talked to Cox about the boulders and Kemp's complaints about them. She testified that Kemp was moving some of the smaller boulders back at that time and that Cox spoke to Kemp about the boulders. Sturgeon testified that Leigh returned and Cox told them that he and the county engineer had been there a few weeks before and could not find anything wrong with the placement of the boulders. Sturgeon testified that Cox told them there was no problem with putting the boulders "back up to the border." Sturgeon testified that Cox then asked them to do a favor for him and leave

the boulders where they were for right now because Kemp was so angry. Sturgeon testified that she and Leigh agreed to Cox's request. Cox testified that he had no recollection of his conversation with Sturgeon and Leigh on July 13, 2005. He testified, however, that if he had actually told them there was no problem with the boulders "we wouldn't have moved the rocks." He testified that he was sure they were okay after they were moved back on July 11, 2005.

On July 31, 2005, Leigh and her husband sent a letter to Defendant Ron Scott (Scott), the Coles County Sheriff, and asked about the status of Peter Leigh's report of vandalism on July 11, 2005. In the letter, they stated that Cox had told them that he and the county engineer saw no problem with the landscaping arrangement and that "Cox said that there was no right-of-way problem with the original placement of the landscaping boulders." They stated that they "left the boulders for the time being where Jack Kemp demanded that they be moved because we feared further consequences of his extreme anger."

On August 2, 2005, Scott sent a letter to Leigh and her husband and stated that either he or Defendant Darrell Cox, his chief deputy, would check on the investigation of Leigh's complaint of vandalism. On August 4, 2005, Cox sent a letter to Kemp and Leigh. The letter stated:

> After investigation and consultation with the county engineer and the township attorney I have determined that the policy for Noble Subdivision will be as follows:
>
> > Charleston Township Road District will maintain the road and the road only. Any object placed on the road will be removed. Any other matters concerning

> Noble Subdivision the Township Road District will
>
> consider to be a neighborhood dispute and will not
>
> become involved.
>
> As far as I am concerned this matter is now concluded.

Cox testified that the letter was written when the boulders had been moved back off the right-of-way, off the road, and he thought everything was smoothed over. Leigh testified that she and her husband "both interpreted [the letter] to allow us to move [the boulders] back to where we had them in the first place." However, Peter Leigh testified that he did not think they had received an indication from anyone that it was okay to move the boulders back from the point where they were on July 11, 2005.

On August 19, 2005, Leigh had the landscaper return the boulders to their original location. Kemp complained, and Defendant Steve Darimont (Darimont), a sheriff's deputy, responded to the complaint on August 22, 2005. Darimont testified that he spoke to Kemp and Kemp complained about an obstruction in the cul-de-sac. Kemp showed Darimont the boulders and told him that they had been moved back onto the roadway. Kemp provided him with a copy of a survey of the cul-de-sac which showed the amount of right-of-way in the cul-de-sac. Darimont testified that he had dispatch call Cox about the situation. Darimont testified that Cox came out and said he would bring machinery the next morning to move the landscape timbers and boulders from the cul-de-sac.

On August 23, 2005, Cox arrived at the cul-de-sac around 8:00 a.m. Three sheriff's deputies, Defendants Tad Freezeland (Freezeland), Darimont and Sanders, also arrived at the cul-de-sac. Darimont testified that Cox requested their presence that morning to keep the peace.

Freezeland's vehicle was equipped with a video camera and recorded the events that morning. Cox testified that "there were rocks where the road was" in front of Leigh's house. Cox testified that the rocks were in the right-of-way. He testified that, because of the neighborhood dispute between Leigh and Kemp, he obtained the plat of the subdivision "and consulted with our attorney and the county engineer" and determined that the boulders were on the township right-of-way. Cox testified that the county engineer went out to look at it and determined that the boulders were a hazard and should be moved. Cox testified that "[t]here is a 50 foot radius line from the center of the cul-de-sac out which would indicate where the township right-of-way is" and that the township owns the property designated as right-of-way.[2] Cox testified that, in most cases, the right-of-way extends well beyond the paved road. He stated, however, that the right-of-way is still the right-of-way of the township.

Cox testified that there was a pin in the cul-de-sac which he believed marked the middle of the cul-de-sac. He had his workers measure from the pin to the edge of the cul-de-sac in several directions. The measurements showed 38 feet from the center to the edge of the cul-de-sac except in front of Leigh's property, which measured 36½ feet. Cox testified, in response to a question from Leigh, that "it was all 38 feet, except in front of your house where you had moved the boards out on to the road and put sod down, . . . which, by the way, nobody complained about until you moved the boulders in."

_____

[2] The record also includes a document, dated October 14, 1970, which is entitled "Order Incorporating Roads and Streets in Richard V. Noble's Subdivision, Charleston Township, Coles County, Illinois." The Order stated that the roads or streets shown in Richard V. Noble's Subdivision were "dedicated to public use" and were "incorporated into the township road system."

Sturgeon came out of the house first on the morning of August 23, 2005, and began arguing that the boulders should not be moved. Leigh also came out and argued that the boulders were on her property. Leigh and Sturgeon sat down on two of the boulders. Darimont testified that he asked them to move out of the area so the men could do their work. The evidence shows that the police officers at the scene told them repeatedly to move and warned them many times that they would be arrested if they continued to refuse to obey the officers' orders and if they refused to move off the township property. Both Leigh and Sturgeon refused to move off of the property and they were both arrested and taken to the Coles County jail. This court notes that the video recording of the encounter shows that the officers on the scene exhibited remarkable patience and restraint in dealing with Leigh and Sturgeon. After the arrest, the township workers moved the landscape timbers back approximately 18 inches and put the boulders in back of the timbers. Cox testified that he moved the rocks because they were on the road. The township workers then put cold mix asphalt on the roadway where the timbers and boulders had been.

Both Leigh and Sturgeon were in the Coles County jail for approximately seven hours on August 23, 2005. On April 20, 2006, the charges against Plaintiffs were nol-prossed.

PROCEDURAL HISTORY

On August 22, 2007, Leigh filed a Complaint (#1) in this case against all Defendants. Also on August 22, 2007, Sturgeon filed an essentially identical Complaint against the Defendants in Case No. 07-2156, which was assigned to Senior United States District Court Judge Harold A. Baker. On August 23, 2007, this court entered a text order and concluded that the two cases should be consolidated and assigned to the same judge. The cases were therefore consolidated and assigned

to this court.

On December 6, 2007, Plaintiffs filed a Amended Complaint (#5) and, on February 29, 2008, Plaintiffs filed a Second Amended Complaint (#39). The 57-page Second Amended Complaint includes many rambling and disjointed allegations. Plaintiffs stated, however, that their complaint was brought pursuant to 42 U.S.C. § 1983 and alleged that their constitutional rights had been violated. Plaintiffs essentially alleged that Defendants conspired to deprive them of property rights. Plaintiffs also alleged that Defendants were liable for false arrest, malicious prosecution and defamation.

During discovery, Defendants disclosed Michael W. Sullivan as an expert witness. Sullivan prepared a "Right-of-Way and Topographic Survey" of the cul-de-sac and also prepared a surveyor's report. In the report, Sullivan stated that he concluded "[b]ased on an analysis of the field measured distances, the record evidence and previous surveys" that "the landscape appurtenances (i.e. stones, mulch and timbers), the trunks of all but the northernmost coniferous tree (16" diameter) and a portion of the bush 'spread' lie on the Right-of-Way of Whispering Oaks Drive." The Survey showed that the location of the cold mix asphalt placed by the township was well within the 50-foot right-of-way of the cul-de-sac.

Sullivan's deposition was taken on November 11, 2008. Sullivan testified that he is a licensed professional land surveyor. Sullivan testified that he was hired to verify the location of the existing right-of-way line for the cul-de-sac and to locate the existing appurtenances such as landscaping, edge of road, rock, trees and mailboxes, with regard to the right-of-way line. Sullivan testified that he was hired to do the work objectively, to "go out there and find the facts." Sullivan

testified that the field work was performed on March 11, 2008. He stated that he considered the plat and replat of the subdivision and also considered previous survey work done by Wayne Parsley and Bruce Foltz, both of whom are competent and reliable surveyors. Sullivan testified that, in doing his survey work, he gives "an awful lot of weight" to his experience. Sullivan testified that the survey he prepared showed the right-of-way line "to the best of his professional opinion, and based on my amounts of data." He testified that the right-of-way line shown was consistent with the two previous surveyors. Sullivan testified that, based upon his measurements, the pin placed by Foltz marking the center of the cul-de-sac was placed correctly. Sullivan testified that it was his opinion, to a reasonable degree of surveying and engineering certainty, that the cold mix asphalt shown on his survey, which is the disputed area in this case, lies within the 50-foot right-of-way belonging to Charleston township. In response to a question from Leigh, Sullivan stated that Leigh never owned that property.

ANALYSIS

MOTIONS FOR SUMMARY JUDGMENT

A.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th

Cir. 1994). In making this determination, the court must construe all facts and draw all reasonable inferences from the record in favor of the non-moving party. Bell v. Duperrault, 367 F.3d 703, 707 (7th Cir. 2004). However, a court is "not required to draw every conceivable inference from the record." Bell, 367 F.3d at 707. Inferences supported by only speculation or conjecture cannot defeat a summary judgment motion. McDonald v. Vill. of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004).

Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004). Thus, to the extent a plaintiff fails to counter the defendants' factual assertions with "materials of evidentiary quality," the court will accept the defendant's version of the facts as true for purposes of summary judgment. Smith v. Caterpillar, Inc., 2006 WL 306652, at *1 (C.D. Ill. 2006). To survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23.

## B. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

On January 30, 2009, Plaintiffs filed a pro se Motion for Summary Judgment to Exclude Michael Sullivan as an Expert Witness (#153), with attached exhibits. On February 5, 2009,

Plaintiffs filed an Additional Memorandum in Support (#154). On February 9, 2009, Defendant Kemp filed a Response (#155) to the Motion and, on February 17, 2009, Defendant Cox filed a Response to the Motion (#160). On February 10, 2009, Defendants Darimont, Freezeland, Sanders, Scott, and Darrell Cox filed a Motion to Join and Adopt Response filed by Defendant Jack Kemp (#157). This Motion was granted on March 5, 2009. On February 17, 2009, Defendants Darimont, Freezeland, Sanders, Scott, and Darrell Cox filed a Motion to Adopt Position Set Forth by Defendant Michael Cox (#163). This Motion (#163) is hereby GRANTED. On March 6, 2009, Plaintiffs' filed a Reply (#185) to Defendants' Responses.

In their pro se Motion for Summary Judgment (#153), Plaintiffs asked this court to exclude Sullivan as an expert witness and therefore exclude from consideration all reports, demonstrative exhibits and opinions offered by Sullivan. In support of this request, Plaintiffs argued that Sullivan's work was "neither objective nor professionally competent as to the methods and principles he used to collect and analyze a very constricted set of data, and as to the constricted set of conclusions he considered." Plaintiffs stated that Sullivan, during his deposition, repeatedly provided his personal opinions without foundation. They argued that Sullivan was "not qualified by his background experience, his report, or his testimony in deposition to serve as an expert witness according to Federal Rules and legal precedent and therefore should be excluded as an expert witness in this case." Plaintiff attached various documents in support of their Motion.

In Plaintiffs' pro se Additional Memorandum in Support (#154), Plaintiffs argued that the relevance of Sullivan's work for Defendants cannot be evaluated without an understanding of the complex set of circumstances which preceded his hiring. In their lengthy rendition of the "complex

set of circumstances," Plaintiffs focused on their claim that Cox and the officers present at Leigh's home on August 23, 2005, accused Leigh of "road theft," which Plaintiffs argued was an unsupported charge. Plaintiffs also focused on measurements included in the recorded plat of the subdivision. The plat of the subdivision, recorded on March 7, 1966, includes a measurement of 916 feet for Leigh's property line. In Foltz's 2001 drawing, the lot line was measured at 899 feet. Based upon this discrepancy, Plaintiffs argued that the lot measurement of the property line of Leigh's property stated on the plat is not consistent with Sullivan's conclusions regarding the location of the cul-de-sac and the 50-foot township right-of-way. Plaintiffs scathingly criticized Sullivan's failure to measure the lot line of Leigh's property and further criticized his failure to consider the lot lines of all six properties in Richard V. Noble's Subdivision. In making their arguments, Plaintiffs stated that it is their prerogative "to make inferences and express opinions based on their reasonable understanding as lay persons after reading evidence produced in Discovery, communicating personally with various surveyors, and reading one of the published works cited by Surveyor Sullivan as a top authority in the field." Plaintiffs attached additional exhibits to the Memorandum.

In their Responses (#155, #160), Defendants argued that Plaintiffs' Motion failed to comply with Local Rule 7.1(D) of the Local Rules of the Central District of Illinois, which sets out the requirements for a Motion for Summary Judgment. Defendants further argued that the relief sought by Plaintiffs was not appropriate for a Motion for Summary Judgment because the relief sought would not result in a judgment in favor of Plaintiffs. Defendants also argued that Plaintiffs have failed to submit any basis to exclude the testimony of Sullivan. Defendants argued that the "criticisms leveled by Plaintiffs are simply arguments that might go to the weight of the testimony

and survey results submitted by Michael Sullivan, and are unfounded credibility attacks."
Defendants argued that Plaintiffs have presented no evidence of methods and practices employed
by land surveyors and have simply argued with the methods and practices used by Sullivan.
Defendants contended that neither Plaintiffs' citation to case authority nor treatises on land
surveying establish a basis for excluding Sullivan's testimony. Most importantly, Defendants
pointed out that Plaintiffs are not qualified to render expert opinions regarding the location of the
disputed property boundary.

In their pro se Reply (#185), Plaintiffs humbly apologized for failing to comply in all
respects with Rule 7.1 of the Local Rules. Plaintiffs also argued that their Motion was properly filed
as a Motion for Summary Judgment because the issues of liability and the separate issue of damages
will be directly impacted by the exclusion of Sullivan as an expert in boundary location. Plaintiffs
then included lengthy arguments regarding the deficiencies of Sullivan's work and opinions.

Plaintiffs also filed a Motion for Judicial Notice (#184) asking this court to take judicial
notice of various exhibits submitted by Plaintiffs in support of their Motion for Summary Judgment
(#153). This court notes that Plaintiffs attached various recorded documents to their Motion (#153),
many of which have no apparent relevance to their Motion or to the issues in dispute in this case.
Accordingly, Plaintiffs' Motion for Judicial Notice (#184) is DENIED. This court notes that it has
considered all relevant exhibits submitted by the parties.

This court agrees with Defendants that Plaintiffs have provided no basis for this court to
exclude Sullivan as a expert witness. Plaintiffs have essentially argued that they do not agree with
Sullivan's methods or conclusions and have contended that they may express opinions, as lay

persons, regarding the inadequacies of Sullivan's methods and conclusions.  This court does not agree.

Rule 701 of the Federal Rules of Evidence provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact issue, and (c) <u>not based on scientific, technical, or other specialized knowledge within the scope of Rule 702</u>.

Fed. R. Evid. 701 (emphasis added).  The 2000 advisory committee note to Rule 701 provides that Rule 701 was amended, to include subsection (c), "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  Fed. R. Evid. 701 advisory committee note, 2000 Amendments; <u>see also</u> <u>Aliotta v. Nat'l R.R. Passenger Corp.</u>, 315 F.3d 756, 763 (7th Cir. 2003).  This court concludes that testimony regarding land surveys and the proper methodology for determining the extent of a township right-of-way is testimony which <u>is</u> "based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Following this court's review of all the documentation and deposition testimony provided in this case, this court concludes that Plaintiffs, as admitted lay persons, cannot provide opinion testimony regarding the proper methodology for determining the extent of the township right-of-way, no matter how convinced they are that they are right and

everyone else is wrong. Because Plaintiffs' Motion for Summary Judgment to Exclude Michael Sullivan as an Expert Witness (#153) is based upon their ability to "to make inferences and express opinions based on their reasonable understanding as lay persons," their Motion (#153) must be DENIED.

## B. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

On January 29, 2009, Defendant Cox filed a Motion for Summary Judgment (#143) and Memorandum in Support (#147). On January 30, 2009, Defendant Kemp filed a Motion for Summary Judgment (#149) and Memorandum in Support (#150). Exhibits in support of the Motions for Summary Judgment were filed conventionally (#148). On February 11, 2009, Defendants Darimont, Freezeland, Sanders, Scott and Darrell Cox filed a Motion to Adopt the Summary Judgment Motions and Memoranda filed by Kemp and Cox (#159). Defendants' Motion (#159) is hereby GRANTED. These Defendants also filed their own Motion for Summary Judgment (#161), with attached exhibits, and Memorandum in Support (#162).

Plaintiffs have filed lengthy pro se responses to Defendants' Motions for Summary Judgment (#166, #167, #168, #169, #171, #191). In addition, Plaintiffs filed pro se Motions to Deny Summary Judgment (#189, #192), which are really responses to Defendants' Motion for Summary Judgment (#161) and were improperly filed as Motions. Plaintiffs have also filed numerous, lengthy exhibits with this court (#179, #180, #195). Defendants have filed Replies in support of their Motions for Summary Judgment (#186, #194).

In their Motions, Defendants contended that they are entitled to summary judgment as to all of Plaintiffs' claims because: (1) Plaintiffs cannot show that they were deprived of any property right

because there is no evidence that they had any property interest in the disputed area of the cul-de-sac; (2) there is no competent evidence to establish the existence of a conspiracy to deprive Plaintiffs of any constitutional right; (3) Plaintiffs have no claim for false arrest because they were arrested for refusing to obey a lawful police order to move from the disputed area; and (4) any state law claims for malicious prosecution or defamation are time-barred.  This court agrees with all of Defendants arguments.

## 1. DEPRIVATION OF PROPERTY INTEREST

Plaintiffs claim that Defendants violated § 1983 of the Civil Rights Act, which provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory."  42 U.S.C. § 1983.  Therefore, to succeed in an action based upon § 1983, a plaintiff must show that (1) the offending conduct was committed by a person acting under color of state law, and (2) that such conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States.  See Moore v. Muncie Police & Fire Merit Comm'n, 312 F.3d 322, 326 (7th Cir. 2002).  In order to have a property interest protected by the Constitution, a person must have a "legitimate claim of entitlement" to some benefit created and defined by "existing rules or understandings that stem from an independent source such as state law."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).

This court agrees with Defendants that Plaintiffs have not shown that they have a protected property interest in the property at issue in this case.[3]  The property in dispute is the property on

_____

[3] This court notes that Plaintiffs have argued, at length, that Defendants have not proven (to Plaintiffs' satisfaction) that the disputed area was part of the township right-of-way.  This

16

which Leigh had placed landscaping timbers and boulders and which was covered by cold mix asphalt by the township after the timbers and boulders were moved back on August 23, 2005. First of all, this court agrees with Defendants that Sturgeon, a California resident, has no claim of any entitlement to the property. Plaintiffs' argument that Sturgeon had a protected property interest in the disputed property where the boulders had been placed as an "overnight guest" at Leigh's home is entirely without merit. Secondly, Leigh has not shown that she had a protected property interest in the property. The evidence provided to this court shows that this property was well within the 50-foot township right-of-way. The grant of a right-of-way to the township precluded Leigh from excluding the township from the property. See McKenzie v. City of White Hall, 112 F.3d 313, 317 (8th Cir. 1997).

Plaintiffs have not disputed that the township could appropriately exercise control over property within the township right-of-way. Instead, they have argued, at length, that they do not agree with the evidence which shows that the disputed property is within the township right-of-way. Plaintiffs' argument essentially is that all three surveyors, Foltz, Parsley and Sullivan, are wrong because they did not measure the lot line on Leigh's property and their conclusions regarding the location of the cul-de-sac are not consistent with the measurement of the lot line included on the original plat of the subdivision. However, Plaintiffs have not provided expert testimony on this point and this court has already concluded that Plaintiffs, as admitted lay persons with no expertise regarding land surveys and the proper methodology for determining the extent of a township right-of-way, cannot provide expert opinion evidence on this issue. Therefore, there is no basis for this

court concludes, however, that it is Plaintiffs' burden to establish a protected property interest in the property.

court to question the conclusions of Foltz, Parsley and Sullivan regarding the location of the township right-of-way. This court further notes that Sullivan, who is a licensed professional land surveyor, did not agree that measurement of Leigh's lot line was necessary in order to determine the location of the township right-of-way.

This court therefore concludes that the evidence in this case shows, conclusively, that the disputed property was located within the township right-of-way. Accordingly, this court concludes that Plaintiffs were not deprived of any protected property interest when the township moved the landscaping timbers and boulders approximately 18 inches back on August 23, 2005.

## 2. CONSPIRACY

Plaintiffs have also claimed that Defendants engaged in a conspiracy to deprive them of their constitutional rights. This court has already concluded that Plaintiffs had no protected property interest in the disputed property, so there could not be an actionable conspiracy to deprive Plaintiffs of property. Plaintiffs have claimed, however, that Defendants engaged in a conspiracy to deprive them of their constitutional rights by arresting them. This court first agrees with Defendants that many, many hours of depositions taken by Plaintiffs did not provide any evidence which would support the existence of a conspiracy on the part of Defendants to arrest Plaintiffs.[4] Kemp, the person involved in the dispute with Leigh, testified that he did not want Plaintiffs arrested, he just

_____

[4] This court notes that Plaintiffs have provided lengthy, lengthy documentation and arguments regarding many years of complaints of property damage, vandalism and break-ins at the Leigh home, including complaints of gravel on the lawn and break-ins where papers were moved but nothing was taken. Plaintiffs fervently believe that the officers who responded to these complaints did not take the complaints as seriously as they should have and did not adequately investigate the complaints. After careful review, this court concludes that this evidence does not in any way support the existence of a conspiracy on the part of any of the Defendants.

wanted the obstructions moved.  In addition, the evidence showed that Plaintiffs were arrested only

after they were warned, many times, to move off of the disputed area of the cul-de-sac.  Plaintiffs

were, in fact, given many opportunities to avoid arrest.  This court agrees with Defendants that there

was ample probable cause for the arrest of Plaintiffs.  They were arrested for refusing to remove

themselves from a portion of the township right-of-way after repeated orders to do so.

### 3.  FALSE ARREST

Plaintiffs have claimed that Defendants are liable for false arrest.  This court agrees,

however, that the undisputed evidence establishes that Defendants had probable cause for arresting

Plaintiffs for obstructing or resisting a police officer pursuant to 720 Ill. Comp. Stat. 5/31-1 (West

2004).  The statute provides, in relevant part, that a "person who knowingly resists or obstructs the

performance by one known to the person to be a peace officer . . . of any authorized act within his

official capacity commits a Class A misdemeanor."  720 Ill. Comp. Stat. 5/31-1(a) (West 2004).  In

this case, the evidence shows that Plaintiffs clearly knew that the officers involved were peace

officers and that Plaintiffs repeatedly refused to follow the officers' orders to leave the township

property so the township could remove the obstructions.  Instead, Plaintiffs sat on the boulders and

refused to leave.  See Ryan v. County of DuPage, 45 F.3d 1090, 1093 (7th Cir. 1995) (it is a violation

of Illinois law to physically resist an officer in the performance of his duty by refusing to comply

with the officer's order).[5]

---

[5]  This court notes that the evidence shows that Plaintiffs physically resisted the orders of
the officers by sitting on the boulders and refusing to leave the property.  Plaintiff Leigh had to
be physically carried to the squad car.  This court therefore concludes that, to the extent that
Plaintiffs are claiming that they were arrested in violation of their First Amendment rights, such
a claim is entirely without merit.

"A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 679 (7th Cir. 2007). In making an assessment as to whether probable cause to arrest exists, "the court must consider the facts as they reasonably appeared to the arresting officer, seeing what he saw, hearing what he heard, and so forth." Holmes, 511 F.3d at 679. The reasonableness of the arrest turns on what the officer knew and does not depend on whether the officer should have known more. See Reynolds v. Jamison, 488 F.3d 756, 765 (7th Cir. 2007). If the officer had probable cause to believe that the person he arrested was involved in criminal activity, a claim for false arrest is foreclosed. Holmes, 511 F.3d at 679-80; Morfin v. City of E. Chicago, 349 F.3d 989, 997 (7th Cir. 2003).

In this case, this court concludes that the evidence clearly shows that the arresting officers had probable cause to arrest Plaintiffs for obstructing or resisting a police officer. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' false arrest claim.

### 4. MALICIOUS PROSECUTION AND DEFAMATION

Plaintiffs have also alleged state law claims for malicious prosecution and defamation.[6] This court agrees with Defendants that these claims are barred by the one-year limitations period contained in 745 Ill. Comp. Stat. 10/8-101 (West 2004). The statute provides that "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of

---

[6] This court notes that there is no merit to Plaintiffs' contention that they have alleged a federal malicious prosecution claim. A plaintiff cannot bring a federal claim for malicious prosecution when the state provides a remedy, which Illinois does. See Newsome v. McCabe, 256 F.3d 747, 751-52 (7th Cir. 2001).

action accrued." 745 Ill. Comp. Stat. 10/8-101(a) (West 2004). In Illinois, "[a] cause of action for malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor." Foryoh v. Hannah-Porter, 428 F. Supp. 2d 816, 824 (N.D. Ill. 2006), aff'd, 217 Fed. Appx. 534 (7th Cir. 2007), quoting Ferguson v. City of Chicago, 820 N.E.2d 455, 459 (Ill. 2004). In this case, the charges against Plaintiffs were nol-prossed on April 20, 2006, thus terminating the criminal proceeding. Plaintiffs filed their original Complaints on August 22, 2007, more than one year after their criminal cases were nol-prossed in state court. Accordingly, Plaintiffs' malicious prosecution claims are time-barred. Because of this conclusion, there is no need to discuss the merits of Plaintiffs' malicious prosecution claim.

In addition, to the extent that Plaintiffs are making a state law defamation claim against the Defendants, this claim was filed more than one year after the last alleged defamatory statement. In responding to the summary judgment motions regarding defamation, the last allegedly defamatory statement referred to by Plaintiffs was a letter dated March 13, 2005. This court therefore agrees with Defendants that the last alleged defamatory statement was made more than one year before Plaintiffs' original Complaints were filed on August 22, 2007. This court additionally notes that Plaintiffs alleged in their Second Amended Complaint that defamatory statements were made by Kemp and others regarding the disputed portion of the cul-de-sac. Because this court has concluded that the evidence in this case establishes that the disputed property was, in fact, within the township right-of-way, the evidence does not support Plaintiffs' claims that any defamatory statements were made.

IT IS THEREFORE ORDERED THAT:

(1) The Motion for Summary Judgment (#143) filed by Defendant Michael Cox is GRANTED.

(2) The Motion for Summary Judgment (#149) filed by Defendant Jack Kemp is GRANTED.

(3) The Motion for Summary Judgment (#161) filed by Defendants, Darrell Cox, Stephen Darimont, Tad Freezeland, Joe Sanders and Ron Scott, is GRANTED.

(4) The pro se Motion for Summary Judgment (#153) filed by Plaintiffs, Ruth A. Leigh and Sarah Sturgeon, is DENIED.

(5) Defendants' Motions to Adopt (#159, #163) are GRANTED.

(6) Plaintiffs' Motion for Judicial Notice (#184) is DENIED.

(7) Plaintiffs' Motions to Deny Summary Judgment (#189, #192) are DENIED.

(8) Judgment is entered in favor of Defendants and against Plaintiffs on Plaintiffs' Second Amended Complaint (#39).

(9) This case is terminated.

ENTERED this 19th day of June, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE